1

2

3

4            UNITED STATES DISTRICT COURT

5                DISTRICT OF NEVADA

6                      * * *

7   NAAVAJO HEALTH FOUNDATION—SAGE        Case No.2:25-CV-834  JCM (NJK)
    MEMOBIAL HOSPITAL, INC.,
8
                         Plaintiff(s),              ORDER
9
          v.
10
    KORY RAZAGHI, et al.,
11
                         Defendant(s).
12

13          Presently before the court is defendants Kory Razaghi ("Kory") and Attentus LLC

14   (collectively "defendants") motion to dismiss.  (ECF No. 18).  Plaintiff Navajo Health Foundation

15   – Sage Hospital, Inc. filed a response (ECF No. 20), to which defendants replied (ECF No. 23).

16

17   **I.    Background**

18          This action stems from a complicated relationship between two brothers and a rural hospital

19   in Arizona.

20          Plaintiff operates a 25-bed, federally funded nonprofit hospital that serves a community of

21   approximately 25,000 Navajo people in a remote, high desert area in Ganado, Arizona, within the

22   territorial boundaries of the Navajo Nation near the Arizona-New Mexico border.  (ECF No. 1 at

23   4).  In 2007, the hospital's board of directors decided that the hospital needed to be upgraded to

24   meet the needs of the community.  (*Id.*).

25          In 2007, defendant Kory Razaghi, Kory's brother Ahmad Razaghi ("Ahmad"), and Manuel

26   Morgan ("Morgan") approached plaintiff with a proposal to develop, finance, and build a new

27

28

hospital. (*Id.*). Kory, Ahmad, and Manuel told plaintiff they would provide their services through a company called Manuel Morgan and Associates ("MMA"). (*Id.*). According to MMA's governing documents Morgan owned 51% of MMA and Attentus, which, at that time, was owned by both Kory and Ahmad owned the other 49%. (*Id.*).

The initial agreement gave full authority to MMA to act as the hospital's agent to negotiate, prepare, execute, and deliver any documents and other agreements connected to developing, financing, and constructing a new hospital. (*Id.* at 5). The agreement was later amended, and Ahmad was required to split the revenue generated by MMA under the First MMA Addendum with Kory and Morgan. (*Id.*).

In 2009, plaintiff and MMA amended their agreement for the second time, making Ahmad plaintiff's CEO. (*Id.*). In 2010, Ahmad informed Kory and Morgan that he did not intend to continue their business arrangements and intended to dissolve MMA, Attentus, and a third company Attentus Provider Group ("APG"). (*Id.*). Ahmad then began withholding Kory's share of the payments received by MMA, Attentus, and APG from plaintiff. (*Id.*).

In 2011, Kory filed suit in Nevada state court against Ahmad, Morgan, and related entities which ended in 2013 with a settlement. (*Id.* at 6). The 2013 settlement agreement required the defendants in that suit to (1) pay Kory one-sixth of all management fees received by MMA and another related business, and (2) pay Kory one-sixth of all hospital development fees and any other development fees for development of commercial, residential, or other non-healthcare improvements on plaintiff's campus that are paid by plaintiff under the MMA Agreement. (*Id.* at 6–7).

Beginning in 2012 and continuing until 2018, plaintiff alleges Ahmad and his business entity, Razaghi Development Company, LLC ("RDC"), defrauded the hospital to the tune of

millions of dollars.  (*Id.* at 7–13).  Kory discovered that Ahmad had secured large amounts of money through his work with plaintiff after the 2013 settlement and sued again in 2018, alleging violations of the agreement.  (*Id.* at 13).  Specifically, Kory and Attentus—now with Kory as the LLC's sole member—alleged that Ahad wrongfully prevented Kory from receiving portions of the fees that he was entitled to.  (*Id.*).

The 2018 litigation ended with a jury verdict in favor of Kory and Attentus and they were awarded $6,853,404.84 in damages.  (*Id.* at 14–15).  The damage award specifically noted that the damages included termination fees and a $1.8 million bonus which was awarded to Ahmad in 2012.  (*Id.* at 15).  Kory and Ahmad filed a satisfaction of judgment in 2025 pursuant to a post-judgment settlement agreement.  (*Id.* at 15; ECF No. 18 at 10).

Plaintiff is currently suing Ahmad and RDC in Arizona alleging fraud.  (ECF No. 1 at 7). Plaintiff claims here that the 2025 settlement between Ahmad and Kory was designed to frustrate recovery in the Arizona litigation, should plaintiff prevail.  (*Id.* at 15–16).  Plaintiff brings five causes of action that include: (1) fraudulent transfers under Nevada law; (2) conspiracy to commit fraudulent transfers; (3) unjust enrichment; (4) money had and received; and (5) conversion.  (*Id.* at 15–18).  Defendants now move to dismiss the suit in its entirety.  (ECF No. 18).

## II.  Legal Standard

As an initial matter, pursuant to Local Rule 78-1, "all motions may be considered and decided with or without a hearing."  The court is satisfied with the documents presented and will rule on defendants' motion without holding oral argument.  Defendants' request for oral argument is denied.

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

1    Dismissal is appropriate under Rule 12(b)(6) when a pleader fails to state a claim upon which relief

2    can be granted.  Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

3           A pleading must give fair notice of a legally cognizable claim and the grounds on which it

4    rests, and although a court must take all factual allegations as true and legal conclusions couched

5    as factual allegations are insufficient.  *Twombly*, 550 U.S. at 555.  Accordingly, Rule 12(b)(6)

6    requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause

7    of action will not do." *Id.*

8

9           To survive a motion to dismiss, "a complaint must contain sufficient factual matter,

10   accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

11   U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when

12   the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

13   defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer

14   possibility that a defendant has acted unlawfully." *Id.*

15

16          If the court grants a motion to dismiss for failure to state a claim, leave to amend should be

17   granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment.

18   *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Under Rule 15(a), a court

19   should "freely" give leave to amend "when justice so requires," and in the absence of a reason

20   such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to

21   cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by

22   virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S.

23   178, 182 (1962).

24

25   ### III.   Discussion

26          Defendants argue that plaintiff's complaint is deficient to the point that each cause of action

27

28

should be dismissed.  Accordingly, the court will analyze each in turn to decide whether dismissal is warranted.

> 1. <u>Fraudulent Transfers</u>

Plaintiff alleges that the 2025 Ahmad-Kory settlement violated NRS Chapter 112, the Uniform Fraudulent Transfer Act (UFTA).  "The UFTA is designed to prevent a debtor from defrauding creditors by placing the subject property beyond the creditors' reach." *Herup v. First Boston Fin., LLC,* P.3d 870, 872 (Nev. 2007).  While a "[f]raudulent conveyance under NRS Chapter 112 does not require proof of intent to defraud," the creditor bears the burden of proof to establish that a fraudulent transfer occurred.  *Sportsco Enters. v. Morris,* 917 P.2d 934, 937 (Nev. 1996).  Plaintiff specifically alleges the settlement violated NRS 112.180(1)(a)–(b) and NRS 112.190(1)–(2).

> a. *NRS 112.180(1)(a)*

An actual fraudulent transfer occurs when "the debtor made the transfer or incurred the obligation ... [w]ith actual intent to hinder, delay or defraud any creditor of the debtor." NRS 112.180(1)(a).  NRS 112.180(2) sets forth a list of inexhaustive factors—none of which are individually dispositive—that the court may consider in determining a debtor's actual intent, including whether:

> (a) The transfer or obligation was to an insider;
> (b) The debtor retained possession or control of the property transferred after the transfer;
> (c) The transfer or obligation was disclosed or concealed;
> (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (e) The transfer was of substantially all the debtor's assets;
> (f) The debtor absconded;
> (g) The debtor removed or concealed assets;
> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (i) The debtor was insolvent or became insolvent shortly after the transfer was made

or the obligation was incurred;

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Defendants claim plaintiff has not sufficiently pled enough of these factors to establish a prime facia claim under NRS 112.180(1)(a). They are incorrect. Plaintiff alleges that the transfer was made to an insider. (ECF No. 1, ¶ 72). NRS 112.150(7)'s plain language explicitly defines an "insider" as "[a] relative of the debtor." It is undisputed that defendant Kory and Ahmad are brothers and, thus, Kory is an insider according to Nevada law. N.R.S. § 112.150(7)(a)(1). Defendants contend that, although Kory and Ahmad are brothers, their relationship was not close. (ECF No. 18 at 14). They point to litigation and the ensuing settlement discussions where both parties were represented by counsel as evidence of estrangement, arguing that Kory cannot be considered an insider. (*Id.* at 14–15). However, defendants do not cite any binding law for the proposition that the closeness of the brothers is relevant to this determination.

Plaintiff also alleged that defendants concealed the transfers. (ECF No. 1, ¶ 73). Defendants claim that the satisfaction of judgment is public record and thus cannot be concealed. (ECF No. 18 at 15). Defendants further assert that the ongoing litigation between plaintiff and Ahmad demonstrates that Ahmad does not regard plaintiff as a creditor, and therefore, no concealment could have occurred. (*Id.*) This presents a question of fact that is not properly resolved at this stage.

Further, plaintiff alleges that before the transfer was made, Ahmad had been sued (*Id.* at ¶ 75), and that the transfer was substantially all of Ahmad's assets. (*Id.* at ¶ 76). Lastly, plaintiff alleges that defendants' transfers were part of an ongoing pattern and scheme of fraud. (*Id.* at ¶ 74).

Taken together, plaintiff has alleged numerous factors listed in NRS 112.180(2) that, accepted as true, lead the court to find the claims against defendants are plausible.   Therefore, dismissal is improper.

i.  Affirmative defense

Plaintiffs ordinarily need not "plead on the subject of an anticipated affirmative defense." *United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993). When an affirmative defense is obvious on the face of a complaint, however, a defendant can raise that defense in a motion to dismiss. *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013).  In addition, federal pleading rules do not require a plaintiff to anticipate and plead facts in its complaint to avoid potential affirmative defenses. *See Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 435 n.9 (2017) ("In civil litigation, a release is an affirmative defense to a plaintiff's claim for relief, not something the plaintiff must anticipate and negate in her pleading.").

Defendant attempts to assert the affirmative defense of good-faith transferee.  Because plaintiff was not required to plead around this defense and the defense is not obvious on the face of the complaint, the court declines to dismiss on this ground.

b.  *NRS 112.180(1)(b)*

Constructive fraudulent transfers under NRS 112.180(1)(b) arise when "the debtor made the transfer or incurred the obligation"

(b) [w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
(1) [w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
(2) [i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond his or her ability to pay as they became due.

Defendants aver that Ahmad's judgment was valued of upwards of $10 million when

considering interest, attorneys' fees, and costs.  They reason that Ahmad settling with Kory for $5.2 million establishes that Ahmad unquestionably received more than equivalent value.  While the settlement appears to have been in Ahmad's best interest, a determination of equivalent value is a question of fact and inappropriate to determine currently.  *See Misty Mgmt. Corp. v. Lockwood*, 539 F.2d 1205, 1212 (9th Cir. 1976).

c.  *NRS 112.190*

Plaintiff must show the following to be successful under its NRS 112.190(1) UFTA claim: "(1) a transfer of an asset occurred, (2) [plaintiff's] claim preexisted the transfer, (3) the transfer was not for 'reasonably equivalent value,' and (4) [defendant] was insolvent at the time of the transfer." *Wells Fargo Bank, N.A. on behalf of Holders of HarborView Mortg. Loan Tr. Mortg. Loan Pass-Through Certificates, Series 2006-12 v. Radecki*, P.3d 593, 597 (Nev. 2018). Defendants challenge plaintiff on elements two and four.[1]

Concerning the timing of the transfer, defendants claim that Ahmad's debt to Kory arose out of the breach of the 2013 settlement agreement and predates the existence of plaintiff's claims against Ahmad by several years.  However, plaintiff asserts that Ahmad's fraudulent activity began in at least 2012 and persisted through 2018.  (ECF No 1, ¶¶ 26–51).  Therefore, plaintiff has alleged that the fraudulent conduct, and thus, its claim to the money allegedly improperly transferred to Kory, predates the 2013 settlement.

Regarding the insolvency requirement, plaintiff has sufficiently pled that that defendants were insolvent.  (*Id.* at ¶ 71).  At this stage, plaintiff need not prove that Ahmad was insolvent or how plaintiff would have come to this conclusion, as that is a question of fact not suited for a

---

[1] Defendants challenge element three (equivalent value) as well, but the same reasoning regarding NRS 112.180(1)(b), *supra*, applies here.

motion to dismiss.

Accordingly, plaintiff has sufficiently pled its NRS 112.190 claim and it will continue.[2]

2.  Conspiracy to Commit Fraudulent Transfers

A civil conspiracy requires an agreement by two or more persons who intend to accomplish an unlawful objective for the purpose of harming another through some concerted action that results in damages.  *Hilton Hotels Corp. V. Butch Lewis Productions, Inc.*, 862 P.2d 1207, 1210 (Nev. 1993).  Fraudulent transfers can form the basis for a civil conspiracy claim as a concerted action.  *See In re Hashim*, 356 B.R. 728, 739 (Bankr. D. Ariz. 2007); *In re Hamilton Taft & Co.*, 176 B.R. 895, 902 (Bankr. N.D. Cal. 1995).

Plaintiff's well pleaded fraudulent transfer claim provides the basis for its civil conspiracy claim.  Further, plaintiff alleged an unlawful objective when it claimed "Kory, Attentus, Ahmad, and RDC knowingly conspired to make the Ahmad-Kory Transfers so as to defraud Ahmad's and RDC's creditor [plaintiff]."  (ECF No. 1, ¶ 81; *see also id.* at ¶¶ 63–65, 72).

Regarding damages, the parties dispute whether Nevada law allows accessory liability for fraudulent transfers or limits recovery to the UFTA's equitable remedies.  The Nevada Supreme Court has held that "nontransferees, *i.e.,* those who have not received or benefited from the fraudulently transferred property, are not subject to accessory liability for fraudulent transfer claims."  *Cadle Co. v. Woods & Erickson, LLP*, 345 P.3d 1049, 1052 (Nev. 2015).

Here, plaintiff does not allege that defendants are nontransferees, but instead asserts they were the recipients of the fraudulent transfer.  Therefore, they are outside the *Cadle* rule and the

---

[2] Since the court has found that Kory is an insider and that plaintiff has sufficiently plead that Ahmad was insolvent, plaintiff's NRS 112.190(2) claim also survives.

claim may be maintained.[3]

While defendants argue that plaintiff's allegations of conspiracy are conclusory, the complaint provides sufficient information to plausibly find against defendants.  Admittedly, the complaint contains a lengthy factual description of plaintiff, Ahmad, and Kory's dealings where Ahmad is at the center of the alleged wrongdoing.  Still, the factual allegations of Kory's conduct, taken as a whole, present adequate support to survive dismissal.  (*See* ECF No. 1, ¶¶ 13–20).

3.  Unjust Enrichment

"The phrase 'unjust enrichment' is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor." *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975,* 942 P.2d 182, 187 (Nev. 1997).

Under Nevada law, a plaintiff has a valid claim for unjust enrichment when (1) "the plaintiff confers a benefit on the defendant"; (2) "the defendant appreciates such benefit"; and (3) "there is acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012) (internal quotation marks omitted).

. . .

. . .

. . .

---

[3] Further, in at least one instance, the Nevada Supreme Court indicated that district courts may be reading *Cadle* too broadly.  *See NCP Bayou 2, LLC v. Medici*, 437 P.3d 173 n.2 (Nev. 2019) ("To the extent the district court may have read *Cadle* too broadly when it stated that no accessory liability exists in fraudulent transfer actions regardless of whether the party is a transferee or a nontransferee, the district court nevertheless reached the right result in dismissing the two causes of action.").

Defendants argue that Kory's judgment against Ahmad establishes, as a matter of law, that Kory was entitled to collect and retain the settlement money. They further claim that it would not be inequitable for Kory to retain the benefit of the settlement since it was the product of the jury verdict.

However, plaintiff alleges that the 2025 settlement money, at least in part, belonged to plaintiff and was obtained by Ahmad through years of fraud before being impermissibly transferred to Kory. (ECF No. 1, ¶¶ 58–60). Whether the settlement funds constitute plaintiff's property that was taken through fraud and transferred to defendants is a question of fact that cannot be appropriately decided here. If, in fact, the settlement money was acquired by fraud, then it may be inequitable for defendants to retain such a benefit. Plaintiff's unjust enrichment claim may continue.

4.  <u>Money Had and Received</u>

Money had and received is a common law variation of an unjust enrichment claim that "can be maintained whenever one man has received or obtained the possession of the money of another, which he ought in equity and good conscience to pay over." *Kondas v. Washoe County Bank,* 271 P. 465, 466 (Nev. 1928). Money had and received "is an action at law, but it is governed by principles of equity." *Chase Inv. Servs. Corp. v. L. Offs. of Jon Divens & Assocs., LLC*, 748 F. Supp. 2d 1145, 1175 (C.D. Cal. 2010), *aff'd,* 491 F. App'x 793 (9th Cir. 2012).

Defendants claim that plaintiff's money had and received claim is duplicative of the unjust enrichment claim requiring dismissal. They cite to *Risinger v. SOC LLC*, where the court dismissed money had and received as duplicative of unjust enrichment. 936 F. Supp. 2d 1235, 1245 (D. Nev. 2013). The Ninth Circuit has stated that two suits are duplicative where "the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Adams v.*

*Cal. Dept. of Health Servs.,* 487 F.3d 684, 689 (9th Cir.2007).

Here, the unjust enrichment and money had and received claims are duplicative. While the elements to the claims are not exactly the same, they are substantially similar, the relief sought, and parties or privies to the action are the same.[4]

Accordingly, the claim is dismissed as duplicative. Nonetheless, because courts have permitted claims for money had and received to proceed alongside unjust enrichment, dismissal is without prejudice. *See e.g. Hester v. Vision Airlines, Inc.*, 2010 WL 3724182 (D. Nev. Sept. 15, 2010); *City of Portland, Oregon v. Elec. Lightwave, Inc.*, No. CIV.03-538-AS, 2003 WL 23962361 (D. Or. Aug. 11, 2003). Plaintiff may seek leave to amend only if it can allege additional facts and identify legal authority demonstrating the claim is not wholly duplicative and may properly proceed as a distinct theory of recovery.

### 5. Conversion

Under Nevada law, a plaintiff must prove that: (1) the defendant committed a distinct act of dominion wrongfully exerted over the plaintiff's personal property; (2) the act was in denial of or inconsistent with the plaintiff's title or rights to the property; and (3) the act was in derogation, exclusion, or defiance of the plaintiff's title or rights in the personal property.[5] *Amatrone v. State Farm Fire and Casualty Co.*, 2018 WL 772078, at *5 (D. Nev. Feb. 7, 2018) (citing *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1049 (Nev. 2000).

. . .

---

[4] The *Risinger* court further noted that it was unclear whether the cause of action applied since the plaintiff did not allege paying the defendant any money to hold for the plaintiff's use. *Risinger*, 936 F. Supp. 2d at 1245. Likewise, the court questions whether this cause of action is applicable notwithstanding the factual differences between *Risinger* and the case at bar. However, since the claim is being dismissed, the court does not inquire further.

[5] While defendants' argument that the claim should be barred since plaintiff must establish legal ownership of the property before a conversion claim may continue is reasonable, it is not the law of Nevada. Defendants admit that Nevada has not adopted such a rule, and it is not this court's role to shape substantive state law.

Although money cannot typically be the subject of a conversion claim, it can be where the money is identifiable, such as being set aside in a separate account or separately earmarked. *Hester v. Vision Airlines, Inc.*, 2011 WL 856871, at *3 (D. Nev. Mar. 9, 2011) (citing *Lopez v. Javier Corral, D.C.*, 367 P.3d 745 (Nev. 2010)).

Plaintiff argues that because it has alleged an identifiable amount that was converted, this claim should survive.  Plaintiff properly notes that identifiable or specific sums of money may support a conversion claim, refuting defendants' overly restrictive reading that only the same exact money can support such a claim.  *See Strack v. Morris*, No. 3:15-CV-00123-LRH, 2015 WL 4647880, at *7 (D. Nev. Aug. 5, 2015).  If plaintiff can prove the underlying settlement funds belong to it, were obtained by Ahmad through fraud, and Kory then exercised dominion over such funds, the conversion claim is actionable.  These are questions of fact that cannot be determined at present. Thus, the conversion claim may continue.

## II.    Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion to dismiss (ECF No. 18) be, and the same hereby is, GRANTED as to the claim for money had and received and DENIED as to all other claims.  Plaintiff has 21 days to seek leave to amend and must attach its proposed amended complaint.

DATED October 15, 2025.

_____
UNITED STATES DISTRICT JUDGE